UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS — EASTERN DIVISION

Jackie Sample,

Plaintiff,

RECEIVED

APR 27 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**1:26-cv-04782
Judge Andrea R. Wood
Magistrate Judge Keri L. Holleb Hotaling
RANDOM / Cat. 2**

v.

DuPage County;

Village of Burr Ridge;

Mayor Gary Grasso, individually;

Nicholas Libero, individually;

Trevor Prindle, individually;

Koula Michalopoulos, individually,

Defendants.

Case No.: 1:26-cv-01299

Judge April M. Perry

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)

1

PRELIMINARY STATEMENT

Plaintiff Jackie Sample respectfully moves this Court pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend its judgment of April 20, 2026, dismissing this action in its entirety. Plaintiff does not seek reinstatement of Defendant Robert Berlin or the DuPage County State's Attorney's Office, and acknowledges the Court's rulings regarding prosecutorial immunity and Eleventh Amendment immunity as to those defendants. Plaintiff does not seek reinstatement of the Falling Water Home Owners Association and acknowledges that any claims against that entity must be pursued in a separate action. Plaintiff does not seek reinstatement of DuPage County Public Works as a separate entity and instead directs those allegations to Defendant DuPage County as the proper municipal defendant.

The Court's dismissal order contained manifest errors of law with respect to six distinct claims and failed to apply controlling Seventh Circuit and Supreme Court precedent to the specific documented facts presented by Plaintiff. Since the dismissal order, Plaintiff has obtained and now presents additional documentary evidence that directly establishes facts the Court found insufficiently pleaded. Plaintiff submits this motion to correct those errors and to request reinstatement of her claims against Defendants DuPage County, Village of Burr Ridge, Mayor Gary Grasso, Nicholas Libero, Trevor Prindle, and Koula Michalopoulos.

Plaintiff now presents the following eleven exhibits in support of this motion: (1) sworn criminal complaint against Investigator Libero, November 12, 2025 (Exhibit A); (2) the September 15, 2025 threatening letter signed by Defendant Prindle on State's Attorney Berlin's official letterhead (Exhibit B); (3) the Village of Burr Ridge water bill dated October 1, 2025 showing an unexplained spike to $5,126.92 (Exhibit C); (4)

2

DuPage County Public Works documentation including the September 4, 2025 Final Disconnect Notice and the January 27, 2026 pink door notice placed on Plaintiff's door simultaneously with the water shutoff and the same day as Plaintiff's protected public speech (Exhibit D); (5) bank records showing Plaintiff's ongoing good faith payment history (Exhibit E); (6) the Village of Burr Ridge Utility Billing email chain of September 30, 2025 confirming the Village had no explanation for the billing spike and referencing Mayor Grasso's office (Exhibit F); (7) the official July 9, 2024 email from Deputy Chief Investigator Libero identifying the prosecutorial process pathway and establishing actual prior institutional knowledge of Plaintiff's complaints (Exhibit G); (8) the December 4, 2025 FOIA response denying all records of investigations involving Plaintiff — directly contradicting Libero's own July 2024 email (Exhibit H); (9) Nicholas Libero's personnel file establishing his promotion to Chief Criminal Investigator in June 2025, his use-of-force and TASER instructor certifications, and the absence of any disciplinary or Brady records despite Plaintiff's sworn complaint (Exhibit I); (10) the DuPage County Brady Giglio List — July 2025 — confirming Libero does not appear despite Plaintiff's documented sworn complaint (Exhibit J); and (11) the Village of Burr Ridge official past due balance notice dated September 26, 2025, bearing Mayor Gary Grasso's name at the top, issued to Plaintiff's residence at 9476 Fallingwater Drive East during the same month that the State's Attorney's Office and DuPage County Public Works were simultaneously taking adverse billing actions against Plaintiff (Exhibit K).

## CONSTITUTIONAL AND STATUTORY CLAIMS UNDER 42 U.S.C. § 1983

Plaintiff presents the following distinct constitutional claims, each independently actionable under 42 U.S.C. § 1983, which provides a cause of action against any person who, acting under color of state law, subjects a citizen to the deprivation of any right secured by the Constitution or federal law. Will v. Michigan

3

Dep't of State Police, 491 U.S. 58 (1989). Each claim is supported by the documentary evidence now before the Court.

First Amendment — Retaliation for Protected Petitioning Activity. 42 U.S.C. § 1983. The First Amendment guarantees the right to petition the government for redress of grievances and to speak publicly on matters of public concern. Borough of Duryea v. Guarnieri, 564 U.S. 379 (2011). Government actors may not take adverse action against a citizen because of the exercise of those rights. Bridges v. Gilbert, 557 F.3d 541 (7th Cir. 2009). Plaintiff alleges that Defendants Libero, Prindle, the Village of Burr Ridge, Mayor Grasso, and DuPage County took adverse actions — including armed intimidation, official threatening letters, unexplained billing spikes, past due notices under the Mayor's name, and water shutoff on the day of protected speech — in retaliation for Plaintiff's sustained protected First Amendment activity including her federal lawsuit, public County Board testimony, social media commentary, formal government complaints, and FOIA requests.

Fourth Amendment — Unreasonable Seizure of Person. 42 U.S.C. § 1983. The Fourth Amendment prohibits unreasonable seizures of persons by government actors. Plaintiff alleges that Defendant Libero's conduct on November 12, 2025 — physically advancing into Plaintiff's personal space while visibly armed, screaming, ordering other officials not to assist her, and threatening removal by sheriff's deputies — constituted an unreasonable seizure. A seizure occurs when a reasonable person would not feel free to leave or to continue exercising constitutional rights. United States v. Mendenhall, 446 U.S. 544, 554 (1980). A certified use-of-force instructor and TASER expert who physically advances on a citizen with a visible firearm in a government lobby while screaming has created circumstances under which no reasonable person would feel free to

4

remain and petition the government. Plaintiff was compelled to leave and thereby deprived of her right to petition.

Fourteenth Amendment — Procedural Due Process. 42 U.S.C. § 1983. Plaintiff has a protected property interest in continued utility service. Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 11-12 (1978). The Due Process Clause requires notice and a meaningful opportunity to be heard before deprivation of that interest. Mathews v. Eldridge, 424 U.S. 319 (1976). Plaintiff alleges that DuPage County Public Works terminated Plaintiff's water service on January 27, 2026, placing a door notice simultaneously with the shutoff — not before it — as documented by Exhibit D. A notice placed at the moment of termination is not the advance notice that the Due Process Clause requires. This constitutes a deprivation of a protected property interest without adequate process.

Fourteenth Amendment — Equal Protection. 42 U.S.C. § 1983. The Equal Protection Clause prohibits government actors from treating similarly situated persons differently on the basis of the exercise of constitutional rights or on otherwise impermissible grounds. Yick Wo v. Hopkins, 118 U.S. 356 (1886). Plaintiff alleges that Defendant Libero's selective refusal to accept Plaintiff's complaints about judges — while the State's Attorney's Office has accepted and acted on similar complaints from other complainants as established by Case No. 1:25-cv-01646 — constitutes discriminatory selective enforcement of governmental processes in violation of the Equal Protection Clause.

Monell Municipal Liability. 42 U.S.C. § 1983. A municipality is liable where a policy, practice, or custom of the municipality was the moving force behind the

5

constitutional violation. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). Deliberate indifference to known constitutional violations constitutes a policy sufficient to support municipal liability. City of Canton v. Harris, 489 U.S. 378, 389 (1989). Plaintiff alleges that DuPage County and the Village of Burr Ridge each maintained policies, practices, or customs that were the moving force behind the constitutional violations alleged herein — established by the documented pattern of parallel adverse actions taken by multiple officials and agencies of each municipality following Plaintiff's protected First Amendment activity.

State Law Claims. Plaintiff further asserts supplemental state law claims under 28 U.S.C. § 1367, including assault under 720 ILCS 5/12-1 and official misconduct under 720 ILCS 5/33-3 arising from Defendant Libero's conduct on November 12, 2025.

## LEGAL STANDARD

A Rule 59(e) motion is appropriate where the movant demonstrates: (1) a manifest error of law; (2) a manifest error of fact; (3) newly discovered evidence; or (4) an intervening change in controlling law. Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000). This motion is timely filed within 28 days of the Court's April 20, 2026 dismissal order.

At the pleading stage, a complaint must contain sufficient factual matter to state a claim plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Pro se complaints are construed liberally and held to less stringent standards than pleadings drafted by counsel. Haines v. Kerner, 404 U.S. 519, 520 (1972). The Court must accept all well-pleaded factual allegations as true

6

and draw all reasonable inferences in Plaintiff's favor. Sigsworth v. City of Aurora, 487 F.3d 506, 512 (7th Cir. 2007).

## DIRECT RESPONSE TO THE COURT'S SPECIFIC DISMISSAL FINDINGS

### A. The Court's Finding Regarding DuPage County — Monell Claim

The Court found that Plaintiff had not plausibly established a Monell claim and that no individual defendant was alleged to have known about Plaintiff's protected speech before the water shutoff. This finding was a manifest error of law for three specific reasons.

First — the Court applied the wrong causation standard. Temporal proximity alone is sufficient to establish causation at the pleading stage. Temporal proximity alone establishes causation at the pleading stage. Thayer v. Chiczewski, 705 F.3d 237, 252 (7th Cir. 2012); Kidwell v. Eisenhauer, 679 F.3d 957, 966 (7th Cir. 2012); Lalvani v. Cook County, 269 F.3d 785, 790 (7th Cir. 2001).
While temporal proximity alone may not always be dispositive, the same-day timing combined with the documented pattern of adverse actions, prior institutional knowledge (Exhibit G), and the sequence of escalating conduct renders the causal inference more than plausible at the pleading stage.

Thayer v. Chiczewski, 705 F.3d 237, 252 (7th Cir. 2012). Plaintiff spoke at the County Board meeting at approximately 10:30 AM on January 27, 2026. Water was shut off the same day after water was confirmed operational at 9:00 AM. Same-day temporal proximity is among the strongest circumstantial evidence of retaliatory motive recognized by the Seventh Circuit.

7

Second- the Court failed to consider the documented pattern as circumstantial evidence of a Monell policy or custom. At the pleading stage, Plaintiff is not required to prove a municipal policy, but only to allege facts that plausibly support a reasonable inference of such a policy or custom. Thomas v. Cook County Sheriff's Dep't, 604 F.3d 293, 303 (7th Cir. 2010); Walker v. Sheahan, 526 F.3d 973, 977 (7th Cir. 2008). Plaintiff's documented timeline identifies at minimum eleven separate adverse actions over a nine-month period following Plaintiff's federal filing, including actions attributable to County actors, which, taken together, support a plausible inference of a broader policy, practice, or custom rather than isolated or unrelated events. See Wilson v. Cook County, 742 F.3d 775, 780 (7th Cir. 2014).

Third — Exhibit G directly establishes that DuPage County officials had actual institutional knowledge of Plaintiff's complaints long before the January 27, 2026 shutoff. Libero's email demonstrates the State's Attorney's Office had reviewed Plaintiff's complaints multiple times as of July 2024. This prior institutional knowledge makes the inference of retaliatory motive well within the range of plausible inference required under controlling Seventh Circuit authority.

## B. The Court's Finding Regarding Nicholas Libero

The Court found that allegations of 'aggressive, hostile, and intimidating conduct' against Libero did not add up to a plausible federal claim. This was a manifest error because the Court failed to apply the First Amendment retaliation framework, failed to apply the Fourth Amendment unreasonable seizure framework, and did not have the benefit of the documentary evidence now presented. Plaintiff presents eleven interlocking exhibits establishing that Libero's November 2025 conduct constituted deliberate First

8

Amendment retaliation and Fourth Amendment unreasonable seizure by the highest-ranking investigative official in the State's Attorney's Office. The Court's failure to apply these constitutional frameworks constitutes a manifest error of law.

## C. The Court's Finding Regarding Trevor Prindle

The Court found that Prindle's claims did not state a plausible federal claim. This was a manifest error because the Court did not analyze Prindle's conduct under the First Amendment retaliation framework and evaluated his letter in isolation rather than in its institutional context.

Defendant Prindle and Defendant Libero both operate from the same institution — the DuPage County State's Attorney's Office, 503 N. County Farm Road, Wheaton, Illinois — under the same supervisor, State's Attorney Robert B. Berlin. The September 15, 2025 letter (Exhibit B) was sent from that same office — the same institution where Libero acknowledged Plaintiff's complaints in writing in July 2024 (Exhibit G), where the Chief Criminal Investigator would physically intimidate Plaintiff two months later in November 2025 (Exhibit A), and where the FOIA officer would deny all records of Plaintiff's complaints in December 2025 (Exhibit H). When evaluated in that institutional context, as controlling law requires, Prindle's letter constitutes a plausible adverse action in retaliation for Plaintiff's protected First Amendment activity.

## D. The Court's Finding Regarding Koula Michalopoulos

The Court found that Michalopoulos's allegations did not plausibly allege any federal claim. This was a manifest error because the Court evaluated her conduct in isolation. When viewed as part of the documented pattern of parallel adverse actions —

9

which controlling law requires at the pleading stage — her assertion to LIHEAP states a plausible First Amendment retaliation and due process claim under 42 U.S.C. § 1983. Iqbal, 556 U.S. at 678.

### E. The Court's Finding Regarding Village of Burr Ridge

The Court found that a single generalized allegation of racial discrimination did not satisfy the Monell standard. Plaintiff now presents specific documented facts establishing the Village's participation in the documented pattern of adverse actions: the $5,126.92 billing spike beginning two months after Plaintiff's federal filing with no identified mechanical cause (Exhibit C); the September 26, 2025 past due balance notice issued under Mayor Gary Grasso's printed name to Plaintiff's residence during the same period as the billing spike (Exhibit K); the water shutoff on the same day as Plaintiff's protected speech (Exhibit D); the simultaneous rather than prior door notice in violation of Memphis Light; and Mayor Grasso's office's direct documented involvement in the disconnection notices (Exhibit F). These specific documented facts satisfy the Monell pleading standard the Court identified as missing.

### DOCUMENTED EVIDENTIARY TIMELINE

The following timeline is established by documentary evidence attached as Exhibits A through K. Each event is documented and verifiable.

1. May 14, 2025 — Plaintiff filed federal lawsuit Case No. 1:25-cv-05329 against four DuPage County judges alleging judicial misconduct and civil rights violations. This constitutes protected First Amendment petitioning activity. The DuPage County State's

Attorney's Office — where both Defendants Libero and Prindle are employed under State's Attorney Robert B. Berlin — prosecutes cases before these same DuPage County judges, giving the State's Attorney's Office direct institutional awareness of Plaintiff's federal filing.

2. July 9, 2024 — Deputy Chief Investigator Nicholas Libero, Badge No. 1102, DuPage County State's Attorney's Office, 503 N. County Farm Road, Wheaton, Illinois, sent Plaintiff an official email stating: "If the Burr Ridge Police Department is able to secure the evidence to support this allegation, we will work with them to develop a case that can be prosecuted." (Exhibit G.) This establishes: (a) Libero had actual prior knowledge of Plaintiff's complaints as of July 2024; (b) the State's Attorney's Office had reviewed Plaintiff's complaints multiple times; and (c) Libero identified a specific process through which Plaintiff's complaints could advance toward prosecutorial review. Note: This email predates the May 2025 federal filing. The dramatically different posture Libero took in November 2025 — after the filing — establishes the retaliatory motive.

3. July 9, 2025 — Approximately two months after Plaintiff's federal filing, an unexplained spike in water consumption began at Plaintiff's residence at 9476 Fallingwater Drive East, Burr Ridge, Illinois, according to the Village of Burr Ridge Utility Billing Department's own records. (Exhibit F.) Plaintiff's previous billing balance was $146.57. The spike ultimately generated alleged consumption of 216,640 gallons in a single billing period — producing a water charge of $4,968.55 for one month alone — with no plumbing leaks, irrigation failures, or mechanical issues identified. A contractor confirmed no leaks, no irrigation problems, and no plumbing defects of any kind existed at the property.

4. July 29, 2025 — Plaintiff paid DuPage County $202.35, evidenced by bank records (Exhibit E), directly refuting any suggestion of willful nonpayment throughout this period.

5. August 26, 2025 — DuPage County Public Works issued a disconnect notice for $37.86.

6. September 4, 2025 — DuPage County Public Works issued a Final Disconnect Notice for the same $37.86 threatening termination of water service over a minimal balance.

7. September 12, 2025 — Plaintiff paid DuPage County $52.35, evidenced by bank records (Exhibit E).

8. September 15, 2025 — Defendant Trevor Prindle, Assistant State's Attorney, operating from the DuPage County State's Attorney's Office at 503 N. County Farm Road, Wheaton, Illinois — the same office where Defendant Libero had reviewed Plaintiff's complaints in July 2024 — sent Plaintiff a threatening collection letter on State's Attorney Berlin's official letterhead threatening to take whatever legal action necessary to collect the $37.86 balance. (Exhibit B.) Plaintiff paid DuPage County $40.21 on this same date (Exhibit E). Deploying a prosecutorial office's official letterhead to collect a $37.86 residential water bill from an active civil rights plaintiff is disproportionate to any legitimate collection purpose and constitutes a documented adverse action.

8A. September 26, 2025 — The Village of Burr Ridge Utility Billing Department, operating under Mayor Gary Grasso's name which appears printed at the top of the document, issued an official past due balance notice to Plaintiff's residence at 9476 Fallingwater Drive East, Burr Ridge, Illinois. (Exhibit K.) This notice was issued eleven days after the Prindle threatening letter from the State's Attorney's Office. In a single 26-day window in September 2025 — four months after Plaintiff's federal filing — three separate governmental entities sent adverse billing communications to Plaintiff's address: DuPage County Public Works (September 4 Final Disconnect Notice), the DuPage County State's Attorney's Office through Defendant Prindle (September 15 threatening letter), and the Village of Burr Ridge under Mayor Grasso's name (September 26 past due notice). This September 2025 cluster of adverse actions from three separate agencies

12

constitutes the most concentrated period of documented multi-agency adverse conduct in this matter.

9. September 30, 2025 — The Village of Burr Ridge Utility Billing Department emailed Plaintiff regarding the unexplained water spike, confirming the Village itself had no explanation for it. (Exhibit F.) Plaintiff responded the same day disputing the billing and noting receipt of a disconnection notice from Mayor Grasso's office. The Village's own email confirms that as of September 30, 2025, neither the Utility Billing Department nor any other Village official had identified a legitimate cause for the billing spike that had begun in July 2025.

10. October 1, 2025 — The Village of Burr Ridge issued a water bill showing current water charges of $4,968.55 for the billing period July 31 to August 31, 2025 — based on alleged consumption of 216,640 gallons. (Exhibit C.) Total amount due: $5,126.92. No legitimate explanation has ever been provided. Defendant Michalopoulos subsequently asserted without inspection, expertise, or evidentiary basis that the anomaly was irrigation-related — an assertion directly contradicted by a contractor who confirmed no irrigation problems, no leaks, and no plumbing defects. The billing spike resolved on its own without any repair or intervention, consistent with a billing anomaly having no identified mechanical cause.

11. November 12, 2025 at approximately 3:45 PM — Plaintiff appeared at the DuPage County State's Attorney's Office, 503 N. County Farm Road, Wheaton, Illinois, to file criminal complaints against a judge and an attorney — protected First Amendment petitioning activity. Defendant Nicholas Libero, now serving as Chief Criminal Investigator — having been promoted to that position in June 2025 per his personnel file (Exhibit I) and operating from the same office where Defendant Prindle had sent the threatening collection letter less than two months earlier — approached Plaintiff in the public lobby and: talked over Plaintiff and refused to listen; ordered a second investigator

13

not to speak to Plaintiff; refused to identify himself stating "I'm not giving you anything"; re-appeared after Plaintiff obtained his name and began yelling that he would not investigate the judges and did not want to hear anything more about judges; while visibly carrying his firearm, walked directly into Plaintiff's personal space while screaming; and threatened to get sheriffs to throw Plaintiff out of the building. (Exhibit A.) Plaintiff, fearing physical harm, immediately left and filed a sworn criminal complaint against Libero with multiple law enforcement agencies pursuant to 28 U.S.C. § 1746. Libero's own statement — that he would not investigate the judges — establishes retaliatory motive on the face of the record without requiring inference.

12.    November 29, 2025 — Plaintiff filed a FOIA request with the State's Attorney's Office requesting Libero's complete personnel file, Brady List status, surveillance footage of the November 12, 2025 lobby incident, and all records of investigations involving Jackie Sample. Filed 17 days after the armed intimidation incident, demonstrating immediate official action.

13.    December 4, 2025 — The State's Attorney's Office responded to the FOIA request. (Exhibit H.) All records of investigations involving Jackie Sample were denied with the statement: "The DuPage County State's Attorney's Office has searched the records of its investigations division and determined that there are no records responsive to your request." This response directly contradicts Libero's own July 9, 2024 email from the same office in which he acknowledged reviewing Plaintiff's complaints multiple times. The FOIA response also effectively denied any record of the November 12, 2025 incident despite Plaintiff's sworn complaint filed with multiple agencies.

14.    December 4, 2025 — Libero's personnel file was produced (Exhibit I), establishing: (a) promotion to Chief Criminal Investigator effective June 7, 2025 — months before the armed intimidation; (b) certified use-of-force instructor and TASER X26/X26P Instructor, demonstrating he is fully trained in the intimidation effect of an armed advance on a

14

civilian; and (c) no disciplinary records or Brady entries despite Plaintiff's sworn complaint, establishing that her complaint was never investigated.

15. July 2025 — The DuPage County Brady Giglio List (Exhibit J) confirms Nicholas Libero does not appear despite Plaintiff's documented sworn complaint — establishing the State's Attorney's Office never opened a Brady investigation. The list confirms Griff R. Lippencott (#4469) of Naperville appears for a Revoked FOID Violation — confirming Case No. 1:25-cv-01646, in which Libero is named. The list also confirms Burr Ridge Police officer Ryan Husarik (#426) appears — confirming the list is current and actively maintained by the State's Attorney's Office.

16. January 27, 2026 at approximately 10:30 AM — Plaintiff publicly spoke at the DuPage County Board meeting reporting judicial misconduct, government retaliation, and improper conduct related to her water utilities. Water was confirmed still operational at 9:00 AM that morning.

17. January 27, 2026 — same day as Plaintiff's protected speech and after Plaintiff's 10:30 AM speech — DuPage County Public Works shut off water service at Plaintiff's residence. A pink door notice was placed on Plaintiff's door the same day as the shutoff — not before. (Exhibit D.) The notice demanded $1,395.44 plus a $100 reconnection fee and required exact cash payment only.

18. January 28 and 29, 2026 — Water was not restored despite emergency assistance requests and Plaintiff's physical presence at Village offices. Village staff confirmed same-day restoration was operationally possible.

19. January 30, 2026 — Water service was restored with no material change in circumstances — confirming the three-day withholding was a discretionary act, not a ministerial necessity.

## ARGUMENTS

15

ARGUMENT I — MANIFEST ERROR OF LAW: THE COURT ERRED IN
DISMISSING PLAINTIFF'S FIRST AMENDMENT RETALIATION AND FOURTH
AMENDMENT UNREASONABLE SEIZURE CLAIMS AGAINST DEFENDANT
LIBERO

The Court dismissed Plaintiff's claims against Defendant Libero finding that allegations of 'aggressive, hostile, and intimidating conduct' did not add up to a plausible federal claim. This was a manifest error of law for four independent reasons, each supported by documentary evidence.

First — the First Amendment retaliation framework was not applied. To state a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) she engaged in constitutionally protected activity; (2) she suffered a deprivation likely to deter protected activity; and (3) the protected activity was a motivating factor in the retaliatory action. Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009); Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012). All three elements are satisfied. Plaintiff was present at the State's Attorney's Office to file criminal complaints about a judge and an attorney — protected First Amendment petitioning activity under Borough of Duryea v. Guarnieri, 564 U.S. 379 (2011). An armed government official advancing into a citizen's personal space while screaming, ordering other officials not to assist her, and threatening removal by sheriff's deputies constitutes conduct that would deter a person of ordinary firmness from continuing to exercise First Amendment rights. Libero's own direct statement — that he would not investigate the judges — establishes retaliatory motive on the face of the record without requiring inference.

Second — the Fourth Amendment unreasonable seizure framework was not applied. The Fourth Amendment, actionable through 42 U.S.C. § 1983, prohibits

16

unreasonable seizures of persons by government actors. A seizure occurs when a reasonable person would not feel free to leave or to continue exercising constitutional rights. United States v. Mendenhall, 446 U.S. 544, 554 (1980). Defendant Libero is a certified use-of-force instructor, TASER instructor, and Master Firearms Instructor — as established by Exhibit I, his own resume, and his personnel file. His armed advance into Plaintiff's personal space while screaming in a government lobby was not the inadvertent conduct of an untrained officer. It was the calculated act of a use-of-force expert who knew precisely the coercive effect of his conduct. Plaintiff was compelled to leave the building and thereby deprived of her constitutional right to petition the government — a cognizable Fourth Amendment seizure claim under 42 U.S.C. § 1983.

Third — Exhibit G establishes actual prior institutional knowledge and a documented shift in posture. In his July 2024 email, Libero acknowledged reviewing Plaintiff's complaints multiple times and identified the specific process through which those complaints could advance toward prosecutorial review. By November 2025 — after Plaintiff filed a federal lawsuit against four DuPage County judges whose cases the State's Attorney's Office prosecutes — Libero took a dramatically different posture, screaming that he would not investigate judges and physically advancing on Plaintiff with his firearm. This documented shift plausibly establishes that Libero's conduct was motivated by Plaintiff's protected judicial misconduct complaints.

Fourth — Exhibit G further establishes a critical structural component of Plaintiff's claims. The email identifies the specific governmental process through which Plaintiff's complaints could advance toward prosecutorial review — namely, documentation by the Burr Ridge Police Department followed by prosecutorial development by the State's Attorney's Office. Plaintiff does not allege a right to prosecution. Rather, Plaintiff alleges that Libero's November 2025 armed intimidation — occurring when Plaintiff returned to access that same governmental process — constitutes an affirmative act obstructing Plaintiff's access to a process available to other similarly

17

situated individuals. The obstruction occurred at two levels: the Burr Ridge Police Department's refusal to document — not a defendant here but relevant to causation — foreclosed the evidentiary prerequisite; and Defendant Libero's armed intimidation foreclosed Plaintiff's ability to access the State's Attorney's process directly. The causal chain is documented: Libero identified the process (Exhibit G); Libero subsequently used armed intimidation to deter Plaintiff from accessing it (Exhibit A); the State's Attorney's Office denied all records of Plaintiff's complaints (Exhibit H); and Plaintiff was denied meaningful access to a governmental process available to other similarly situated individuals. At the pleading stage, Plaintiff need only allege facts that render this theory plausible. The documentary evidence satisfies that standard.

Exhibits A, H, I, and J, considered together, establish a four-source documented pattern of institutional non-response to Plaintiff's sworn complaint against Defendant Libero that directly corroborates both the First Amendment retaliation claim and the Monell deliberate indifference standard under City of Canton v. Harris, 489 U.S. 378, 389 (1989).

Exhibit A — Plaintiff's sworn criminal complaint against Defendant Libero, executed under penalty of perjury pursuant to 28 U.S.C. § 1746 and filed on or about November 12, 2025 with the U.S. Department of Justice, the Federal Bureau of Investigation, the Illinois Attorney General, the DuPage County Sheriff's Office, and the DuPage County State's Attorney's Office itself — constitutes Plaintiff's formal documented complaint of constitutional misconduct by the highest-ranking investigative official in the State's Attorney's Office.

Exhibit H — The December 4, 2025 FOIA response from the DuPage County State's Attorney's Office states that the Office's investigations division searched its records and found no records responsive to Plaintiff's request for all documents related to investigations involving Jackie Sample. This response was issued less than one month

18

after Plaintiff filed her sworn complaint with the State's Attorney's Office itself. The State's Attorney's Office's own FOIA response thus confirms the Office found no investigative record of Plaintiff's complaint — directly contradicting Libero's own July 9, 2024 email in which he acknowledged reviewing Plaintiff's complaints multiple times, and confirming that Plaintiff's November 2025 sworn complaint generated no investigative record whatsoever within the very office against which it was filed.

Exhibit I — Libero's 176-page personnel file, produced in response to Plaintiff's FOIA request, contains no disciplinary records, no complaint records, and no record of any internal investigation into Libero's November 12, 2025 conduct — despite Plaintiff's sworn complaint filed with five separate agencies including the State's Attorney's own office. A personnel file that records every salary change, every promotion, and every training certificate across a career spanning decades contains no record of a sworn complaint filed under penalty of perjury with the investigator's own employing office.

Exhibit J — The DuPage County Brady Giglio List dated July 2025, maintained by the State's Attorney's Office itself, confirms that Nicholas Libero does not appear on the list despite Plaintiff's documented sworn complaint — establishing that the State's Attorney's Office never opened a Brady investigation into his conduct toward Plaintiff. The same list confirms that Griff R. Lippencott, Badge No. 4469, of the Naperville Police Department, appears on the list for a Revoked FOID Violation — confirming that the list is current, actively maintained by the State's Attorney's Office, and applied to law enforcement officers with documented misconduct issues. Libero's conspicuous absence from this actively maintained list, despite Plaintiff's sworn complaint filed with multiple agencies, establishes a plausible inference of institutional non-response to documented misconduct. Plaintiff further notes that Case No. 1:25-cv-01646, currently pending in the United States District Court for the Northern District of Illinois, names Investigator Nicholas Libero as a defendant, as verifiable on the public docket of the Northern District of Illinois. Plaintiff does not characterize the allegations of that case beyond noting its

19

existence and pendency as relevant to the question of whether Libero has been subject to allegations of misconduct in connection with his investigative functions — allegations the Brady Giglio List does not reflect despite its active and current maintenance.

Taken together, these four independent documentary sources — Plaintiff's sworn complaint (Exhibit A), the State's Attorney's FOIA denial confirming no investigative record exists (Exhibit H), Libero's personnel file containing no disciplinary record (Exhibit I), and the Brady Giglio List reflecting no Brady review (Exhibit J) — each originating from a different institutional process, each arriving at the same result of complete silence regarding Plaintiff's documented complaint, establish a plausible pattern of deliberate institutional indifference to a documented constitutional violation. This four-source pattern directly satisfies the deliberate indifference standard required for municipal liability under City of Canton v. Harris, 489 U.S. 378, 389 (1989), and corroborates Plaintiff's First Amendment retaliation claim by demonstrating that Defendant Libero's conduct was institutionally shielded from accountability.

The institutional connection between Defendant Libero and Defendant Prindle further corroborates this claim. Both operate from the same office — 503 N. County Farm Road, Wheaton, Illinois — under State's Attorney Robert B. Berlin. The documented sequence from that single office is: Libero acknowledged Plaintiff's complaints in July 2024 (Exhibit G); Prindle sent a threatening collection letter on Berlin's letterhead in September 2025 (Exhibit B); Libero physically intimidated Plaintiff in November 2025 (Exhibit A); and the State's Attorney's Office denied all records of Plaintiff's complaints in December 2025 (Exhibit H). Four adverse institutional acts from one office, two officials, one supervisor, in a nine-month period following Plaintiff's federal filing against judges whose cases that office prosecutes. At the pleading stage, the inference that these institutional acts reflect a pattern of adverse conduct motivated by Plaintiff's protected activity is well within the range of plausible inference required under controlling Seventh Circuit authority.

20

Plaintiff further alleges that on or about November 2025, she filed a sworn criminal complaint against Defendant Libero with the DuPage County Sheriff's Office, in addition to the U.S. Department of Justice, the Federal Bureau of Investigation, the Illinois Attorney General, and other agencies. The Sheriff's Office received Plaintiff's sworn complaint and took no action. This establishes: (a) DuPage County law enforcement had actual institutional knowledge of Libero's conduct as of November 2025 — two months prior to the January 27, 2026 water shutoff; (b) the institutional non-response across multiple agencies establishes a documented pattern of non-response plausibly reflecting deliberate indifference; and (c) DuPage County as a municipal entity had actual notice of the constitutional violation and failed to investigate, discipline, or take corrective action — satisfying the deliberate indifference standard under City of Canton v. Harris, 489 U.S. 378 (1989).

The dismissal of this claim was a manifest error of law. The claims should be reinstated.

## ARGUMENT II — MANIFEST ERROR OF LAW: THE COURT ERRED IN FINDING NO PLAUSIBLE CAUSAL CONNECTION BETWEEN PLAINTIFF'S PROTECTED SPEECH AND THE WATER SHUTOFF

The Court found no plausible connection between Plaintiff's protected speech and the water shutoff because no individual defendant was alleged to have known about Plaintiff's protected speech before acting. This imposed a pleading standard that controlling Seventh Circuit law does not require and constitutes a manifest error of law.

Temporal proximity alone establishes causation at the pleading stage. While temporal proximity alone may not always be dispositive, the same-day timing combined with the documented pattern of adverse actions, prior institutional knowledge (Exhibit

21

G), and the sequence of escalating conduct renders the causal inference more than plausible at the pleading stage. Thayer v. Chiczewski, 705 F.3d 237, 252 (7th Cir. 2012); Kidwell v. Eisenhauer, 679 F.3d 957, 966 (7th Cir. 2012); Lalvani v. Cook County, 269 F.3d 785, 790 (7th Cir. 2001). Plaintiff spoke at the County Board meeting at approximately 10:30 AM on January 27, 2026. Water service was shut off the same day after water was confirmed operational at 9:00 AM. Same-day temporal proximity is among the strongest available forms of circumstantial evidence of retaliatory motive.

Exhibit G establishes that county officials had actual prior institutional knowledge of Plaintiff's complaints and her residence's water account. Plaintiff spoke at a public County Board meeting about retaliation specifically related to her water utilities — the very subject of the shutoff that occurred hours later. The Court must draw all reasonable inferences in Plaintiff's favor. It is a reasonable inference that county officials responsible for utility services were aware of a public governmental meeting at which a citizen made allegations directly concerning their department.

In addition to the January 27, 2026 County Board meeting, Plaintiff has engaged in ongoing protected speech concerning DuPage County officials, including speaking at additional public meetings in DuPage and Cook Counties and posting publicly on social media regarding these issues. This pattern of protected activity further supports a plausible inference that Defendants were aware of Plaintiff's speech and acted within a context of continued opposition to her advocacy.

Plaintiff's protected First Amendment activity was sustained, public, and institutionally known to DuPage County at multiple levels before the January 27, 2026 shutoff. Plaintiff engaged in sustained public social media commentary on Facebook documenting and reporting alleged judicial misconduct, government retaliation, and the conduct of DuPage County officials including State's Attorney Robert Berlin and DuPage

County judges. These posts were accessible to any county official or employee. Plaintiff also filed a sworn complaint which included criminal actions against Investigator Libero with the DuPage County Sheriff's Office and with the DuPage State's Attorneys Office in November 2025 — two months before the water shutoff — giving DuPage County law enforcement actual institutional knowledge of Plaintiff's protected activity. A county whose Sheriff's Office received a sworn complaint about retaliatory conduct by a senior State's Attorney official in November 2025 is not able to plausibly allege that county agencies had no knowledge of Plaintiff's protected First Amendment activity when the water was shut off two months later.

The adverse action was carried out by DuPage County personnel operating within a system that had prior knowledge of Plaintiff's protected activity, and at the pleading stage, Plaintiff need only allege facts supporting a plausible inference that the decision was made with such awareness, not identify the specific individual actor."

The eleven-event documented timeline establishes that the water shutoff was the culmination of a sustained pattern of adverse actions beginning two months after Plaintiff's federal filing. This escalating documented pattern is not consistent with coincidence. The dismissal of this claim was a manifest error of law. The claim should be reinstated.

ARGUMENT III — MANIFEST ERROR OF LAW: THE COURT ERRED IN DISMISSING THE PROCEDURAL DUE PROCESS CLAIM

The Supreme Court has clearly established that utility customers have a protected property interest in continued utility service and are entitled to notice and a

meaningful opportunity to be heard before termination. Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1 (1978); Mathews v. Eldridge, 424 U.S. 319 (1976).

Exhibit D is documentary proof that the DuPage County Public Works Notice of Discontinued Water Service was placed on Plaintiff's door on January 27, 2026 — the same day as the water shutoff. Water was confirmed operational at 9:00 AM that morning. The notice was provided simultaneously with or after the shutoff — not before it. A notice placed at the moment of termination does not constitute a meaningful opportunity to be heard before termination within the meaning of Memphis Light, 436 U.S. at 14-18. Plaintiff had no advance notice and no opportunity to cure, contest, or be heard before the termination of a utility essential to drinking, cooking, bathing, and sanitation. The dismissal of this claim was a manifest error of law. The claim should be reinstated.

## ARGUMENT IV — MANIFEST ERROR OF LAW: THE COURT ERRED IN DISMISSING THE MONELL CLAIM AGAINST DUPAGE COUNTY

The Court cited Wilson v. Cook County, 742 F.3d 775, 780 (7th Cir. 2014) for the proposition that a single incident or even three incidents do not suffice. However, Plaintiff's documented timeline now identifies at minimum eleven separate adverse actions across multiple agencies over nine months — exceeding the Wilson threshold significantly.

The State's Attorney's Office alone — a single DuPage County institutional entity — generated at least four documented adverse acts in this period: Libero's prior acknowledgment of Plaintiff's complaints followed by a dramatically different posture (Exhibits G and A); Prindle's threatening collection letter on Berlin's official letterhead (Exhibit B); Libero's armed intimidation of Plaintiff (Exhibit A); and the FOIA denial

24

contradicting Libero's own prior written acknowledgment (Exhibit H). When a single governmental office generates four documented adverse actions against the same plaintiff in a nine-month period following her federal filing against judges whose cases that office prosecutes, the inference of an institutional pattern meeting the Monell standard is well within the range of plausible inference required at the pleading stage.

DuPage County Public Works generated three additional documented adverse actions: the August 26, 2025 disconnect notice; the September 4, 2025 Final Disconnect Notice; and the January 27, 2026 water shutoff on the same day as Plaintiff's protected speech without adequate prior notice. Walker v. Sheahan, 526 F.3d 973, 977 (7th Cir. 2008); Thomas v. Cook County Sheriff's Dep't, 604 F.3d 293, 303 (7th Cir. 2010). The Village of Burr Ridge generated at least four additional documented adverse actions: the unexplained billing spike generating $4,968.55 in water charges for a single month (Exhibit C); the September 26, 2025 past due notice under Mayor Grasso's name (Exhibit K); the $5,126.92 water bill with no identified cause (Exhibit C); and the water shutoff without adequate prior notice (Exhibit D). DuPage County's policy, practice, and custom of retaliating against persons who report judicial misconduct and file civil rights litigation against county officials was the moving force behind the violations of Plaintiff's constitutional rights. Monell, 436 U.S. at 694. City of Canton v. Harris, 489 U.S. 378, 389 (1989). The dismissal of this claim was a manifest error of law.

## ARGUMENT V — MANIFEST ERROR OF LAW: THE COURT ERRED IN DISMISSING DEFENDANT MICHALOPOULOS BY EVALUATING HER CONDUCT IN ISOLATION

The Court dismissed Michalopoulos finding her allegations did not plausibly allege any federal claim. This was a manifest error because the Court evaluated her

25

conduct in isolation from the documented pattern rather than viewing the complaint as a whole as required. Iqbal, 556 U.S. at 678.

Michalopoulos asserted without inspection, expertise, or evidentiary basis that the anomalous water spike was irrigation-related and communicated that assertion to LIHEAP, directly delaying restoration of Plaintiff's water service. A contractor confirmed no irrigation problems, no leaks, and no plumbing defects — directly contradicting her assertion. When viewed in the context of the documented pattern of parallel adverse actions — including the simultaneous adverse billing actions from three agencies in September 2025, the $5,126.92 bill, and the Mayor's past due notice — Michalopoulos's act was one additional affirmative act that extended Plaintiff's deprivation of water service. The Court's failure to view her conduct in context constitutes a manifest error of law. The claim should be reinstated.

## ARGUMENT VI — THE UNEXPLAINED WATER BILLING SPIKE WAS AN INDEPENDENT ADVERSE ACTION IN RETALIATION FOR PLAINTIFF'S PROTECTED FEDERAL LITIGATION

The $5,126.92 water billing spike appeared in July 2025 — approximately two months after Plaintiff filed her federal judicial misconduct lawsuit. (Exhibit C.) The spike generated an alleged consumption of 216,640 gallons in a single billing period — producing a water charge of $4,968.55 for one month alone — with no identified mechanical cause. No legitimate explanation has ever been provided. The Village's own October 20, 2025 email asked Plaintiff to explain the spike, confirming the Village itself had no explanation (Exhibit F). A contractor ruled out every mechanical cause. The spike resolved on its own without any repair or intervention, consistent with a billing anomaly having no identified mechanical cause.

26

The September 26, 2025 past due balance notice issued under Mayor Gary Grasso's printed name (Exhibit K) demonstrates that while the Village was generating this unexplained billing spike, the Village under Mayor Grasso's institutional authority was simultaneously pressuring Plaintiff about a past due balance at the same address. These two tracks — the unexplained billing spike and the mayoral past due notice — operating simultaneously in September and October 2025, within months of Plaintiff's federal filing, raise a plausible inference of adverse billing conduct motivated by Plaintiff's protected activity. An adverse action need not be dramatic to support a First Amendment retaliation claim under 42 U.S.C. § 1983. Bridges v. Gilbert, 557 F.3d 541, 555 (7th Cir. 2009). The Court's failure to consider this independent adverse action was a manifest error.

ARGUMENT VII — MAYOR GRASSO'S INDIVIDUAL LIABILITY IS SUPPORTED BY DOCUMENTED EVIDENCE OF DIRECT PERSONAL INVOLVEMENT

Mayor Gary Grasso, as the chief executive of the Village of Burr Ridge, had supervisory authority over the Village's utility billing and disconnection functions. His individual liability is now supported by two independent documentary exhibits establishing his direct personal involvement in the adverse billing campaign against Plaintiff.

First — Exhibit F, the September 30, 2025 email exchange, documents that Plaintiff received a disconnection notice from Mayor Grasso's office, establishing his office's direct participation in the disconnection process.

Second — Exhibit K, the September 26, 2025 Village of Burr Ridge official past due balance notice, bears Mayor Gary Grasso's name prominently at the top of the document as the issuing authority. This notice was sent to Plaintiff's residence at 9476

27

Fallingwater Drive East, Burr Ridge, Illinois on September 26, 2025 — the same month that the State's Attorney's Office and DuPage County Public Works were simultaneously taking adverse billing actions against Plaintiff. Mayor Grasso's name on an official Village billing notice sent to Plaintiff during the documented period of adverse billing activity directly establishes his personal involvement in the billing pressure campaign.

Taken together, Exhibits F and K establish that Mayor Grasso's office was directly involved in the adverse billing campaign at two documented points in time — September 26, 2025 (Exhibit K) and September 30, 2025 (Exhibit F). A supervisory official may be held individually liable under 42 U.S.C. § 1983 where the supervisor directed the conduct, knew about the conduct and facilitated or approved it, or maintained an institutional environment of deliberate indifference to constitutional violations. Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001). Mayor Grasso's documented direct personal involvement in the utility billing pressure campaign against Plaintiff — occurring during the same period as the unexplained billing spike and the other adverse billing actions — states a plausible supervisory liability claim under 42 U.S.C. § 1983.

## DEFENDANTS TO BE REINSTATED

Plaintiff does not seek reinstatement of Defendant Robert Berlin, the DuPage County State's Attorney's Office, DuPage County Public Works, or the Falling Water Home Owners Association. Based on the foregoing arguments and documentary evidence, Plaintiff respectfully requests reinstatement of the following defendants and claims:

28

1.   DuPage County — Monell municipal liability under 42 U.S.C. § 1983 for an institutional policy or custom of retaliating against persons who report judicial misconduct or file civil rights litigation against county officials, as demonstrated by the eleven-event documented pattern in Exhibits A through K, satisfying the Monell standard and exceeding the Wilson threshold.

2.   Nicholas Libero — individual capacity — First Amendment retaliation under 42 U.S.C. § 1983 established by his own direct statements (Exhibit A) and documented shift in posture from his prior written acknowledgment (Exhibit G); Fourth Amendment unreasonable seizure under 42 U.S.C. § 1983 through armed intimidation by a certified use-of-force instructor compelling Plaintiff to leave (Exhibit I); Equal Protection violation through selective discriminatory refusal to accept complaints about judges (Exhibit J and Case No. 1:25-cv-01646); institutional non-response established by Exhibits H, I, and J collectively; supplemental state law claims including assault under 720 ILCS 5/12-1 and official misconduct under 720 ILCS 5/33-3.

3. Trevor Prindle — individual capacity — First Amendment retaliation under 42 U.S.C. § 1983 through deployment of the State's Attorney's Office institutional letterhead to threaten legal action over $37.86 against an active civil rights plaintiff, constituting a disproportionate adverse action in the institutional context established by Exhibits A, G, H, and B collectively.

4. Koula Michalopoulos — individual capacity — First Amendment retaliation and due process violation under 42 U.S.C. § 1983 through an affirmative assertion to LIHEAP without factual basis, extending Plaintiff's deprivation of water service in the context of the documented pattern of parallel adverse actions.

5.   Village of Burr Ridge — municipal liability under 42 U.S.C. § 1983 for: the unexplained $5,126.92 billing spike generating $4,968.55 in a single month with no identified cause (Exhibit C); the September 26, 2025 past due notice under Mayor

Grasso's name during the period of the billing spike (Exhibit K); water termination on the same day as protected speech without adequate prior notice in violation of the Due Process Clause and Memphis Light, 436 U.S. 1 (1978) (Exhibit D); and Mayor Grasso's office's documented direct involvement in the billing pressure campaign (Exhibits F and K).

6. Mayor Gary Grasso — individual capacity — supervisory liability and direct participation under 42 U.S.C. § 1983 in First Amendment retaliation through documented direct personal involvement in the adverse billing campaign as established by Exhibits F and K, under Chavez v. Illinois State Police, 251 F.3d 612 (7th Cir. 2001).

RELIEF REQUESTED

WHEREFORE, Plaintiff Jackie Sample respectfully requests that this Court:

A. Alter and amend the April 20, 2026 judgment of dismissal;

B. Reinstate Plaintiff's claims under 42 U.S.C. § 1983 against Defendants DuPage County, Village of Burr Ridge, Mayor Gary Grasso, Nicholas Libero, Trevor Prindle, and Koula Michalopoulos as set forth herein;

C. Allow Plaintiff leave to file a Second Amended Complaint incorporating the documented evidentiary timeline, constitutional claim frameworks, exhibit references, and legal authority set forth in this motion;

D. In the alternative, if the Court declines full reinstatement, reinstate at minimum Plaintiff's claims against Defendant Libero for First Amendment retaliation and Fourth Amendment unreasonable seizure (Argument I), the First Amendment water shutoff retaliation claim (Argument II), and the procedural due process claim regarding water termination without adequate prior notice

30

(Argument III), as these three claims are each independently supported by documentary evidence and controlling constitutional authority; and

E. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

_____

Jackie Sample

Plaintiff, Sui Juris

jackshousinganddevelopment@gmail.com

(773) 719-0337

Date: _____

31

## EXHIBIT LIST

Exhibit A —

Sworn Criminal Complaint Against DuPage County State's Attorney Investigator Nicholas Libero, executed under penalty of perjury pursuant to 28 U.S.C. § 1746, documenting the November 12, 2025 armed intimidation incident at the DuPage County State's Attorney's Office, 503 N. County Farm Road, Wheaton, Illinois, at approximately 3:45 PM. Filed with the U.S. Department of Justice, FBI, Illinois Attorney General, DuPage County Sheriff's Office, DuPage County State's Attorney's Office, and Office of Executive Inspector General.

Exhibit B —

September 15, 2025 letter from Defendant Trevor M.J. Prindle, Assistant State's Attorney, DuPage County State's Attorney's Office, 503 N. County Farm Road, Wheaton, Illinois, on the official letterhead of State's Attorney Robert B. Berlin, threatening legal action over a $37.86 water/sewer account balance against Plaintiff who had filed a federal civil rights lawsuit four months earlier.

Exhibit C —

Village of Burr Ridge water bill dated October 1, 2025, Account No. 6638009476-02, showing current water charges of $4,968.55 based on alleged consumption of 216,640 gallons for the billing period July 31 to August 31, 2025, with total amount due of $5,126.92. No legitimate explanation for the spike has ever been provided.

32

Exhibit D —

DuPage County Public Works documentation: (1) September 4, 2025 Final Disconnect Notice threatening termination of water service over $37.86; and (2) the pink Notice of Discontinued Water Service for 9476 Fallingwater Drive East, Burr Ridge, Illinois, placed on Plaintiff's door on January 27, 2026 — the same day as the water shutoff and the same day as Plaintiff's protected public speech — not before, demanding $1,395.44 plus $100 reconnection fee.

Exhibit E —

Bank transaction records showing payments to DuPage County IL of $202.35 on July 29, 2025; $52.35 on September 12, 2025; and $40.21 on September 15, 2025, demonstrating Plaintiff's ongoing good faith payment history and refuting any suggestion of willful nonpayment.

Exhibit F —

Village of Burr Ridge Utility Billing Department email chain dated September 30, 2025 and October 20, 2025, subject: Excessive Water Usage Report — 9476 Fallingwater Dr. East, in which the Village acknowledged the spike and asked Plaintiff to explain the cause — confirming the Village itself had no explanation — and Plaintiff's response noting receipt of a disconnection notice from Mayor Grasso's office.

Exhibit G —

Official email from Deputy Chief Investigator Nicholas Libero, Badge No. 1102, Criminal Investigations Division, DuPage County State's Attorney's Office, Nicholas.Liberio@dupagecounty.gov, dated July 9, 2024 at 1:54 PM, subject: Jackie Sample Complaint, stating in pertinent part: "If the Burr Ridge Police Department is able

33

to secure the evidence to support this allegation, we will work with them to develop a case that can be prosecuted." Establishes Libero's actual prior institutional knowledge of Plaintiff's complaints as of July 2024 and identifies the specific prosecutorial process pathway subsequently obstructed.

Exhibit H —

December 4, 2025 FOIA response letter from Janet A. Barbeau, FOIA Officer, DuPage County State's Attorney's Office, denying all records of investigations involving Jackie Sample with the statement: "The DuPage County State's Attorney's Office has searched the records of its investigations division and determined that there are no records responsive to your request" — directly contradicting Libero's own July 9, 2024 email acknowledging multiple reviews of Plaintiff's complaints.

Exhibit I —

Nicholas Libero's DuPage County personnel file (key pages), establishing: promotion to Chief Criminal Investigator effective June 7, 2025; Illinois Law Enforcement Training and Standards Board certification as Firearms and Use of Force Instructor; TASER X26/ X26P Instructor Certification; resume self-identifying as Master Firearms Instructor and TASER Instructor; Lead Homicide Investigator certificate; Armed Narcotic Suspect Recognition and Illegal Firearm Seizure training; and absence of any disciplinary records or Brady entries despite Plaintiff's sworn complaint.

Exhibit J —

DuPage County Brady Giglio List — July 2025 — confirming Nicholas Libero does not appear on the list despite Plaintiff's documented sworn complaint; confirming Griff R. Lippencott (#4469) of Naperville appears for Revoked FOID Violation, verifying Case

34

No. 1:25-cv-01646 in which Libero is named; and confirming Burr Ridge Police officer Ryan Husarik (#426) appears, confirming the State's Attorney's Office maintains active Brady records.

Exhibit K —

Village of Burr Ridge official past due balance notice dated September 26, 2025, bearing Mayor Gary Grasso's name prominently at the top of the document as the issuing authority, addressed to Plaintiff's residence at 9476 Fallingwater Drive East, Burr Ridge, Illinois. Issued eleven days after the State's Attorney's Office threatening letter (Exhibit B) and during the same month as the DuPage County Public Works Final Disconnect Notice — establishing Mayor Grasso's direct personal documented involvement in the adverse billing campaign against Plaintiff during the period of the

## DECLARATION OF JACKIE SAMPLE

## PURSUANT TO 28 U.S.C. § 1746

I, Jackie Sample, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief. The documentary evidence referenced herein and attached as Exhibits A through K is in Plaintiff's possession, is authentic, and is available for production upon request or by court order. Each exhibit accurately supports the specific factual allegations attributed to it.

Executed on the 20th day of April, 2026.

_____

Jackie Sample

Plaintiff, Pro Se

jackshousinganddevelopment@gmail.com

(773) 719-0337

# EXHIBIT A

1

**Complainant:**
Jackie Sample
jackshousinganddevelopment@gmail.com
(773)719-0337

**Subject of Complaint:**
**DuPage County State's Attorney Investigator, Nicholas "Nick" Liberio**

**I. Declaration**

I, Jackie Sample, being first duly sworn, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that I am over the age of 21 years, competent to testify, and that the foregoing is true and correct to the best of my knowledge and belief.

**I. SUMMARY OF COMPLAINT**

This is a formal criminal complaint reporting **intimidation, harassment, threats, civil rights violations, dereliction of duty, and discriminatory misconduct** committed by **DuPage County Investigator Nicholas Liberio** on **November 12, 2025**, at the DuPage County State's Attorney's Office.

The conduct described below created a credible threat to my safety, violated my rights as a complainant, and appears to constitute **criminal behavior under Illinois and federal law.**

II. INCIDENT DETAILS

**Date:** November 12, 2025
**Time:** Approximately 3:45 p.m.
**Location:** DuPage County State's Attorney's Office, Wheaton, Illinois

On the above date and time, I arrived at the DuPage County State's Attorney's Office to **submit criminal complaints I had prepared against a judge and an attorney involved in my family law case.**

While I was standing in the public lobby, Investigator **Nicholas "Nick" Liberio** came out to speak with me. His demeanor was **extremely aggressive, hostile, and unprofessional** from the moment he approached.

- He **talked over me**, refused to listen, and spoke in a raised and hostile tone.

- His conduct was **unsettling, intimidating, and entirely unbecoming of a sworn public servant.**

1

- He abruptly **stormed away**, ordering the second investigator present not to speak to me.

- When I asked for his name, he stated, **"I'm not giving you anything."**

The second investigator attempted to speak with me respectfully, but Nick **scolded him like a child**, repeatedly asserting, **"I'm the boss,"** and ordered him to walk away.

I then asked the receptionist for the names of the two investigators who were present. She initially refused. I requested that her supervisor be notified that I was requesting the investigators' names because **they are legally required to identify themselves** when acting in their official capacity.

The receptionist returned with a sticky note containing only the name **"Nick Liberio."** I again asked for the name of the second investigator. At that point, **Nick Liberio re-appeared in a hostile and unhinged state.**

He began **yelling repeatedly**, stating:

- **He was not going to investigate the judges.**

- **He didn't want to hear anything more about judges.**

While visibly angry and **carrying his firearm**, Nick **walked directly up into my personal space**, screaming:

- **"Why are you here?"**

- **Threatening to get the sheriffs to throw me out of the building.**

At no point did I raise my voice, insult him, or behave disrespectfully. I repeatedly asked him to **de-escalate**, but he only became **louder and more aggressive**, closing distance in a manner that made me fear physical harm.

Feeling unsafe, I immediately left the building.

I then proceeded to file a criminal complaint against Investigator Nick Liberio.

## III. CRIMINAL VIOLATIONS

Based on his behavior, the following violations appear to apply:

### 1. Illinois Criminal Offenses

2

- **Intimidation – 720 ILCS 5/12-6**
Using threats, aggression, and abuse of authority to interfere with my lawful right to file a complaint.

- **Official Misconduct – 720 ILCS 5/33-3**
Knowingly failing to perform duties required by law; abusing his position; refusing to identify himself; refusing to accept complaints.

- **Harassment – 720 ILCS 5/26.5**
Engaging in threatening, hostile, aggressive conduct causing reasonable emotional distress.

- **Assault – 720 ILCS 5/12-1**
His aggressive posture, yelling, and advance toward me while armed placed me in reasonable apprehension of receiving bodily harm.

- **Disorderly Conduct – 720 ILCS 5/26-1**
Unreasonable, threatening behavior in a public government building.

**2. Federal Civil Rights Violations**

- **18 U.S.C. § 242 – Deprivation of Rights Under Color of Law**
Using government authority to intimidate and silence a complainant attempting to report crimes by public officials.

- **18 U.S.C. § 245 – Interference with Federally Protected Activities**
Interfering with my right to file grievances and seek assistance from law-enforcement.

- **18 U.S.C. § 1513 – Retaliation Against a Witness or Complainant**
His threats and intimidation appear retaliatory because my complaint involved judges.

## IV. ADDITIONAL MISCONDUCT

Investigator Liberio stated that the State's Attorney's Office **"will not and cannot investigate divorce matters."**

However, this statement is contradicted by publicly filed federal litigation demonstrating that Investigator Liberio **has, in fact, participated in investigations connected to divorce-related criminal allegations.**
Specifically, in **Case No. 1:25-cv-01646,** *Grif R. Lippencott v. Investigator Nicholas Liberio.* Investigator Liberio is named in a lawsuit alleging misconduct against Nicholas Liberio arising from an investigation tied to a divorce matter.

3

This inconsistency strongly suggests:

- **Discrimination in how complainants are treated,**

- **Dereliction of duty,** and

- **Possible obstruction of criminal reporting**

## V. REQUEST FOR ACTION

I respectfully request:

1. A **full criminal investigation** into Investigator Nicholas Liberio.

2. Review of surveillance footage from the lobby during the incident.

3. Interviews with the second investigator and the receptionist.

4. Determination of whether federal civil rights laws were violated.

5. Immediate steps to ensure complainants can safely file reports without intimidation.

## VI Retaliation

I believe Investigator Nicholas "Nick" Liberio retaliated against me because I am filing complaints regarding judges. On November 12, 2025, at the DuPage County State's Attorney's Office, Liberio approached me aggressively, refused to accept or listen to my complaints, refused to fully identify himself, threatened to involve sheriffs, and advanced toward me while armed, causing reasonable fear for my safety.

**Violations:**

- **Illinois:** Intimidation (720 ILCS 5/12-6), Official Misconduct (720 ILCS 5/33-3), Harassment (720 ILCS 5/26.5), Assault (720 ILCS 5/12-1), Disorderly Conduct (720 ILCS 5/26-1)

- **Federal:** 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law), 18 U.S.C. § 245 (Interference with Federally Protected Activities), 18 U.S.C. § 1513 (Retaliation Against a Witness or Complainant)

This conduct obstructed my ability to report criminal activity and intimidated me from exercising my lawful rights.

4

## VII. SWORN STATEMENT (28 U.S.C. § 1746)

I declare under penalty of perjury, pursuant to **28 U.S.C. § 1746**, that the facts and statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I am willing to provide additional documents, evidence, witness statements, or sworn testimony upon request.

Executed on: _____

Signature: _____

Printed Name: ____Jackie Sample____

5

# EXHIBIT B



# ROBERT B. BERLIN
## STATE'S ATTORNEY
### DU PAGE COUNTY, ILLINOIS

September 15, 2025

Madison and Jackie Sample
9476 Fallingwater Drive, East
Burr Ridge, IL 60527

      **Past Due Water/Sewer Account #176638-30506429**
      **Past Due Amount: $37.86**
      **Service Address: 9476 Fallingwater Drive, E, Burr Ridge, IL 60527**

Dear Madison and Jackie Sample:

      Please be advised that the undersigned represents the DuPage County Public Works Department. It appears that the above delinquent amount is still due and owing.

      Please remit payment in full to the **DuPage County Public Works Department. 7900 S. Route 53, Woodridge. Illinois 60517 by October 6, 2025.** If this amount is not paid by **October 6, 2025,** this office shall take whatever legal action necessary to collect the balance. For your convenience, payments in person will be accepted at the above location in cash, however change cannot be returned: therefore, if paying in person by cash, the exact amount due must be tendered.

      If you have any questions regarding the past due amount, the manner or location for making payment, please contact the DuPage County Public Works Department, Billing Division at (630) 985-2905.

                              Sincerely,

                              TREVOR M.J. PRINDLE
                              Assistant State's Attorney

TMJP:kjw
cc: Public Works. Billing Division (Diane)

WILLIAM J. BAUER JUDICIAL OFFICE FACILITY ANNEX ● 503 NORTH COUNTY FARM ROAD ● WHEATON, ILLINOIS 60187
PHONE: (630) 407-8000    TDD: (630) 510-3611    GENERAL E-MAIL: STATES.ATTORNEY@DUPAGECOUNTY.GOV
CRIMINAL BUREAU FAX: (630) 407-8171    CIVIL BUREAU FAX: (630) 407-8201    CHILD SUPPORT FAX: (630) 407-8006

# EXHIBIT C



## PLEASE SEE OTHER SIDE FOR ADDITIONAL BILLING INFORMATION

**BILL DATE:** 10/01/2025
**NAME:** MADISON SAMPLE
**SERVICE ADDRESS:** 9476 Fallingwater Dr East

**ACCOUNT NUMBER:** 6638009476-02

**PIN:** f0e3453

| METER INFORMATION | | BILLING PERIOD | |
|---|---|---|---|
| Current Read | 864207 | Current Read Date | 08/31/2025 |
| Previous Read | 647567 | Previous Read Date | 07/31/2025 |
| Consumption (Gallons) | 216640 | Type Of Read | A |

| | |
|---|---|
| PREVIOUS BALANCE | $167.25 |
| LAST PAYMENT RECEIVED | $20.68 CR |
| **PAST DUE BALANCE** | $146.57 |

CURRENT CHARGES:
| | |
|---|---|
| WATER | $4,968.55 |
| Fixed Charge | $11.80 |
| Rec/Disc/Serv Fee | $0.00 |

| | |
|---|---|
| TOTAL CURRENT CHARGES | $4980.35 |
| **TOTAL AMOUNT DUE BY 10/20/2025** | **$5126.92** |
| TOTAL DUE AFTER 10/20/2025 | 5624.96 |

10% LATE CHARGE WILL BE ADDED TO CURRENT CHARGES IF PAYMENT IN FULL IS NOT RECEIVED BY DUE DATE

DETACH HERE — RETURN BOTTOM PORTION WITH CHECK PAYABLE TO VILLAGE OF BURR RIDGE — DETACH HERE



**Village of Burr Ridge**
7660 S. County Line Road
Burr Ridge, IL 60527-4721
(630) 654-8181 ext. 4030
www.burr-ridge.gov
Pay by Phone 877-314-2481

**ACCOUNT NUMBER:** 6638009476-02
**SERVICE ADDRESS:** 9476 Fallingwater Dr East

| | |
|---|---|
| TOTAL AMOUNT DUE BY 10/20/2025 | **5126.92** |
| TOTAL AMOUNT DUE AFTER 10/20/2025 | 5624.96 |
| AMOUNT PAID | |

MADISON SAMPLE
JACKIE SAMPLE
9476 FALLINGWATER DR EAST
BURR RIDGE, IL 60527

PLEASE DO NOT FOLD OR STAPLE

# EXHIBIT D



DUPAGE COUNTY PUBLIC WORKS
PO BOX 4751
CAROL STREAM, IL 60197-4751

**Disconnect Notice**
CUSTOMER COPY

Please keep this portion for your records

| CUSTOMER NAME | CUSTOMER NUMBER | PARCEL ID | SERVICE ADDRESS |
|---|---|---|---|
| SAMPLE & JACKIE JOHNSON-SAMPLE, MADISON | 176638 | 10-02-409-031 | 9476 FALLINGWATER DR E |

| DUE DATE | DISCONNECT DATE | ACCOUNT NUMBER | ACCOUNT TYPE | NOTICE DATE | PAST DUE | AMOUNT DUE |
|---|---|---|---|---|---|---|
| 09/04/2025 | 09/05/2025 | 30506429 | RESIDENTIAL | 08/26/2025 | $37.86 | $37.86 |

### FINAL NOTICE

Pursuant to DuPage County code, your water service will be discontinued on or after the due date shown above due to nonpayment of your water and/or sanitary sewer bill.

To avoid discontinuation of service, FULL PAYMENT MUST BE RECEIVED PRIOR TO THE ABOVE DUE DATE. THERE IS AN ADDITIONAL $100.00 FEE TO HAVE SERVICE RESTORED AFTER TERMINATION.

For your convenience you can pay online at https://ipn.paymentus.com/cp/epco, or by calling (855) 748-8523. Additionally, there is a payment drop box located at 7900 S Route 53, Woodridge, Illinois. This notice must be included with your payment when using the drop box.

If you have any questions, please contact our Billing Department at (630) 985-2905.

Please include your Customer # and Account # in the memo field of your check, when using your bank's online bill pay, for one-time payments, or enrollment in the customer portal.

------------------------------ ✂ DETACH AND RETURN THE PORTION BELOW WITH YOUR PAYMENT ✂ ------------------------------



DUPAGE COUNTY PUBLIC WORKS
PO BOX 4751
CAROL STREAM, IL 60197-4751

**Disconnect Notice**
REMIT PORTION

| SERVICE ADDRESS | CUSTOMER NUMBER | ACCOUNT NUMBER | DUE DATE | AMOUNT DUE |
|---|---|---|---|---|
| 6 FALLINGWATER DR E | 176638 | 30506429 | 09/04/2025 | $37.86 |

☐ Check here for change of billing address only and note changes below

SAMPLE & JACKIE JOHNSON-SAMPLE, MADISON
9476 FALLINGWATER DR E
BURR RIDGE, IL 60527

Promptly Send To:
DUPAGE COUNTY PUBLIC WORKS
PO BOX 4751
CAROL STREAM, IL 60197-4751

This notice was Placed on my door on Jan 27, 2026, the same day of the water shut off.



**DuPage County**
**Public Works**

## NOTICE OF DISCONTINUED WATER SERVICE

ADDRESS: 9476 Fallingwater Dr E
Burr Ridge

ACCOUNT: 176638-30506429

TOTAL AMOUNT NOW DUE: $ 1395.44

($ 1,295.44 + $100.00 - TURN ON FEE )

IN ACCORDANCE WITH THE ORDINANCE, SERVICE HAS BEEN DISCONTINUED BY THE DEPARTMENT OF PUBLIC WORKS FOR FAILURE TO REMIT PAYMENT FOR SEWER AND/OR WATER SERVICE.

RE-ESTABLISHMENT OF SERVICE WILL REQUIRE FULL PAYMENT - **CASH ONLY, (NO PERSONAL CHECKS)** FOR THE AMOUNT OUTSTANDING PLUS ANY RECONNECTION FEES. **WHEN PAYING BY CASH, EXACT AMOUNT NEEDED, NO CHANGE IS AVAILABLE.**

IF YOU HAVE ANY QUESTIONS REGARDING THE DISCONTINUATION OF SERVICE PLEASE CONTACT DUPAGE COUNTY PUBLIC WORKS AT 630-985-2905.

PAYMENTS: 8:00 a.m. to 2:00 p.m.

DuPage County Public Works

421 N. County Farm Rd        7900 S. Rte 53
Wheaton, IL                  Woodridge, IL

# EXHIBIT E

1

7:11

## Transaction Details

### Transaction Details

| | |
|---|---|
| Type | Card |
| Transaction date | Sep 12, 2025 |
| Posted date | Sep 15, 2025 |

IL 60139

📞 (630) 985-2905

| | |
|---|---|
| Description | DUPAGE COUNTY, IL<br>630-985-2905 IL          09/13 |
| Also known as | DUPAGE COUNTY IL |
| Merchant type | Utilities: electric, gas, water and sanitation |
| Method | Online, mail or phone |
| Category | Bills & utilities |

## Having a problem with this transaction?

Let's look into it.

Report a problem

## Recent charges

| | |
|---|---|
| DUPAGE COUNTY, IL<br>Sep 16, 2025 | –$40.21 |
| DUPAGE COUNTY, IL<br>Jul 29, 2025 | –$202.35 |

< Transaction Details



## DUPAGE COUNTY IL

# −$40.21

## Transaction Details

| | |
|---|---|
| Type | Card |
| Transaction date | Sep 15, 2025 |
| Posted date | Sep 16, 2025 |

IL 60139

📞 (630) 985-2905

| | |
|---|---|
| Description | DUPAGE COUNTY, IL<br>630-985-2905 IL          09/15 |
| Also known as | DUPAGE COUNTY IL |
| Merchant type | Utilities: electric, gas, water and sanitation |
| Method | Online, mail or phone |
| Category | Bills & utilities |

## Having a problem with this transaction?

Let's look into it.

Report a problem



# DUPAGE COUNTY IL

## −$52.35

## Transaction Details

| | |
|---|---|
| Type | Card |
| Transaction date | Sep 12, 2025 |
| Posted date | Sep 15, 2025 |

IL 60139

📞 (630) 985-2905

| | |
|---|---|
| Description | DUPAGE COUNTY, IL<br>630-985-2905 IL      09/13 |
| Also known as | DUPAGE COUNTY IL |
| Merchant type | Utilities: electric, gas, water and sanitation |
| Method | Online, mail or phone |
| Category | Bills & utilities |

# EXHIBIT F

1

 Gmail

## Excessive Water usage report - 9476 Fallingwater Dr. East

Utility Billing <UtilityBilling@burr-ridge.gov>                                    Tue, Sep 30, 2025 at 10:45 AM
To: "jackshousinganddevelopment@gmail.com" <jackshousinganddevelopment@gmail.com>

Please see the attached letter that was mailed to your home. It is important that we hear from someone regarding the water usage.

You are using allot more water than usual and we have been trying to contact you.

**Thank you,**
**Village of Burr Ridge – Utility Billing Department**
📞 Phone: (630) 654-8181 ext. 4030
✉ Email: UtilityBilling@burr-ridge.gov

🖥 **Online Portal:**
To view past invoices, make a payment, set up AutoPay, or create an account, visit:
www.burr-ridge.gov/invoicecloud

📞 **Pay by Phone:**
Call **(877) 314-2481**
*Note: A 12-digit account # is required.*

---

**2 attachments**

📄 **Unusual Water Usage - Summer.pdf**
284K

📊 **9476 Fallingwater Dr. E- 9.30.325.xlsx**
46K

 Gmail

Jack Johnson <jackshousinganddevelopment@gmail.com

## Re: Excessive Water usage report - 9476 Fallingwater Dr. East

I message

Jack Johnson <jackshousinganddevelopment@gmail.com>
To: Utility Billing <UtilityBilling@burr-ridge.gov>

Tue, Sep 30, 2025 at 10:55 AI

Hello,

Thank you for your email. The only correspondence I have received by mail is a disconnection notice from Mayor Grasso's office regarding termination of my services for a balance of $38.00.

On Tue, Sep 30, 2025 at 10:46AM Utility Billing <UtilityBilling@burr-ridge.gov> wrote:

Please see the attached letter that was mailed to your home. It is important that we hear from someone regarding the water usage.

You are using allot more water than usual and we have been trying to contact you.

Thank you,
**Village of Burr Ridge – Utility Billing Department**
Phone: (630) 654-8181 ext. 4030
Email: UtilityBilling@burr-ridge.gov

**Online Portal:**
To view past invoices, make a payment, set up AutoPay, or create an account, visit:
www.burr-ridge.gov/invoicecloud

**Pay by Phone:**
Call **(877) 314-2481**
*Note: A 12-digit account # is required.*

 Gmail

Jack Johnson <jackshousinganddevelopment@gmail.com

---

**Request for information regarding water usage & payment - 9476 Fallingwater Dr. East**
1 message

---

Utility Billing <UtilityBilling@burr-ridge.gov>                                     Mon, Oct 20, 2025 at 9:47 AM
To: Jack Johnson <jackshousinganddevelopment@gmail.com>

Good morning,

We are reaching out to discuss a recent increase in water usage at your property. Our records indicate that there was a significant spike in consumption, which appears to have since decreased. At this time, we would appreciate it if you could confirm whether you are aware of the cause of this increase and what equipment or system may have been operating during that period.

DuPage County has also requested clarification on what may have been running during the high-usage timeframe. Any information you can provide would be helpful.

Additionally, please note that the last payment we received was on July 9, 2025, in the amount of $20.68. The current invoice is attached for your reference, and it is due today. Kindly advise if payment will be made.

Should you have any questions or require further details, please don't hesitate to reach out.

Thank you,
**Village of Burr Ridge -- Utility Billing Department**
☎Phone: (630) 654-8181 ext. 4030

✦ Email: UtilityBilling@burr-ridge.gov

▣ Online Portal:
To view past invoices, make a payment, set up AutoPay, or create an account, visit:
www.burr-ridge.gov/invoicecloud

☎ Pay by Phone:
Call (877) 314-2481
*Note: A 12-digit account # is required.*

From: Jack Johnson <jackshousinganddevelopment@gmail.com>
Sent: Tuesday, September 30, 2025 10:56 AM
To: Utility Billing <UtilityBilling@burr-ridge.gov>
Subject: Re: Excessive Water usage report - 9476 Fallingwater Dr. East

# EXHIBIT G

**M Gmail**

## Jackie Sample Complaint

Liberio, Nicholas <Nicholas.Liberio@dupagecounty.gov>                                    Tue, Jul 9, 2024 at 1:54 PM
To: "jackshousinganddevelopment@gmail.com" <jackshousinganddevelopment@gmail.com>

Good afternoon Ms. Sample,

I attempted to call you several times. I reviewed your current complaints and as we previously directed twice prior, we suggest you file your complaint to the ARDC in reference to the complaints against your previous attorneys.

In regards to your complaint on the judge, we again refer you to the JIB/Judicial Inquiry Board for your complaints against Judge Orel.

And for your complaint against your husband, Madison Sample for alleging threatening and coercing you, we refer you to the Burr Ridge Police Department, which is the jurisdiction you currently reside in to investigate this information. If the Burr Ridge Police Department is able to secure the evidence to support this allegation, we will work with them to develop a case that can be prosecuted.

I also noted that in your complaint you had submitted your complaints to Chief Judge Bonnie Wheaton in April of 2024 who encouraged you to follow your attorneys direction. We concur that you would be best served if you had legal representation.

In regards to your request that the DCSAO investigate an incident that occurred in Chicago, when you were reportedly threatened by a man representing a judge. We reviewed this with you when we met in the lobby and request that you submit this complaint to the JIB and to the Chicago Police department. Any crimes that were committed in Chicago/Cook County need to be reported to the jurisdiction having venue. This complaint should be reported and investigated by the Chicago police department.

Lastly many of the other issues and concerns you brought forward, need to be addressed in court and we recommend that you retain an attorney to represent you in court as proceeding pro se against experienced trial attorneys will be arduous. The DuPage County Bar Association may be an option to obtain recommendations for representation.

Respectfully,

**Deputy Chief Nick Liberio #1102**

*Criminal Investigations*

*DuPage County State's Attorney's Office*

*2nd Floor Investigations*

*503 N. County Farm Road*

*Wheaton, IL 60187*

*630-407-8095 (Office)*

*Nicholas.Liberio@dupagecounty.gov*



**From:** Jack Johnson <jackshousinganddevelopment@gmail.com>
**Date:** July 7, 2024 at 7:02:41 PM CDT
**To:** "McAnally, John" <John.McAnally@dupagecounty.gov>

[Caution: This email originated outside Dupagecounty.gov. Do not click links or open attachments unless you recognize the sender and know the content is safe.]

Hello John Mcanally

I hope this email finds you well.  I am available after Wednesday to meet.  Would Thursday work for you?


Jackie Sample


773-719-0337

# EXHIBIT H



# ROBERT B. BERLIN
## STATE'S ATTORNEY
DU PAGE COUNTY, ILLINOIS

December 8, 2025

Jackie Sample Johnson
jackshousingandconstruction@gmail.com

Re: November 29, 2025 – Freedom of Information Act Request

Ms. Sample Johnson,

This correspondence is in response to your Freedom of Information Act (5 ILCS 140/1, et seq.) request of Saturday November 29, 2025 in which you sought:

> "ALL Complaints including Criminal Complaints submitted against Judge Kenton Skarin submitted by Jackie Johnson-Sample.
> ALL Complaints Including Criminal Complaints submitted against Judge James Orel submitted by Jackie Johnson-Sample.
> ALL Complaints Including Criminal Complaints submitted against Judge Neal Cerne submitted by Jackie Johnson-Sample.
> ALL Complaints Including Criminal Complaints submitted against Judge Susan Alvarado submitted by Jackie Johnson-Sample.
> – I am requesting any and all documents, reports, memos, video footage, and other materials related to investigations involving or referencing Jackie Johnson-Sample. This includes materials pertaining to both criminal and non-criminal investigations and any applicable documentation[sic]."

Your request is granted in part and denied in part. Portions of your request are exempt from production in that they are communications between a public body and its counsel and are therefore exempt pursuant to 5 ILCS 140/7(1)(m). Similarly, some records are predicational in nature and reflect opinions, particularly legal opinions, and would be exempt pursuant to 5 ILCS 140/7(1)(f).

Please be advised that you have the right to have the response to this request reviewed by the Public Access Counselor (PAC) at the Office of the Illinois Attorney General. 5 ILCS 140/9.5(a). You can file your Request for Review with the PAC by writing to:

Leah Bartelt, Public Access Counselor
Office of the Illinois Attorney General
500 South 2nd Street
Springfield, Illinois 62701
E-mail: public.access@ilag.gov

You also have the right to seek judicial review of your response by filing a lawsuit in the State circuit court. 5 ILCS 140/11. If you choose to file a Request for Review with the PAC, you must do so within 60 calendar days of the date of this partial denial letter. 5 ILCS 140/9.5(a). Please note that you must include a copy of your original FOIA request and this denial letter when filing a Request for Review with the PAC.

Sincerely,

Janet A. Barbeau
FOIA Officer

# EXHIBIT I

## DuPage County State's Attorney's Office

DOB: 10/27/

SS #: ███████████

TX #: _____

| Start Date | Classification | Salary | Comments |
|---|---|---|---|
| 5/15/17 | CRiminaL: Investigator | $50,000 | |

6/12/25

## DU PAGE COUNTY PERSONNEL PAYROLL CHANGE

### Employee Information (Must include address and telephone number for New Hires & Rehires)

Full Name  Nicholas Liberio          HR Company  1000          HR Process Level  EO011

HR Department Level  SA001          Employee ID ▮▮▮▮▮▮

Telephone ( ___ ) ___ - ___          Gender: Male ☑  Female ☐

### New/ Current Information:

Effective Date (New Hires/ Rehires) _____          Accounting Company  1000          Accounting Unit  6500

Department Name  State's Attorney          Activity Code _____

Position Number  1299          Current Job Code  2127          Current Job Title  Chief Criminal Investigator

Current Salary          Hourly  $ 54.3590          Bi-Weekly  $ 4,076.93          Annual  $ 106,000.05

Grade  316          % of Midpoint  76.9

Probationary Period Ends _____          Date of Review _____

Shift _____          Payrule Code (Convalescent Center Only) _____          Phone Group (Convalescent Center Only) _____

### Employee Status

☐ New Hire  ☐ Rehire  75.0  Bi-Weekly Hours  ☑ Full-Time  ☐ Part-Time  ☐ Per Diem  ☐ Registry  ☐ Temporary

☐ Disability/ FMLA  From _____  To _____  Return Date _____          ☐ Applying for IMRF

Date IMRF

☐ Leave of Absence  From _____  To _____  Return Date _____          Begins _____

☐ Military Leave  From _____  To _____  Return Date _____

☐ Worker's Comp  From _____  To _____  Return Date _____

☐ Suspension  From _____  To _____  Return Date _____          ☐ Paid  ☐ Unpaid

### In Service Changes

☐ Merit Increase          ☐ Promotion          ☐ Job Reclassification          ☐ Other Salary Action
(Describe in remarks section)

☑ Equity          ☐ Demotion          ☐ Change Status  From _____  To _____

☐ Transfer (Accounting Company/Unit/Activity Code)  From _____  To _____

### Changes

Effective Date  6/7/2025

New Position Number  1299          New Job Code  2127          New Job Title  Chief Criminal Investigator

New Salary          Hourly $ 58.2052          Bi-Weekly $ 4,365.39          Annual $ 113,500.14

Grade  316          % of Midpoint  82.7          % of Change  7.08          ☐ Merit (score) _____

☐ 6 month/ Probationary Period Review          ☐ 1 year Review

Probationary Period Ends _____          Date of Next Review _____

Shift _____          Payrule Code (Convalescent Center Only) _____          Phone Group (Convalescent Center Only) _____

### Remarks (If applicable, please include the position number and the name of employee vacating above position)

Finance Approval 25-008.

Requested by ▮▮▮▮▮▮ / RL          Date  6-11-2025
Department Head/ Elected Official

Approved by _____          Date _____
Director of Human Resources
When the Department Head and Director of Human Resources are the same, the Chief Administrative Officer, or designee, shall sign
for the Director of Human Resources.

Revised 9/12/2024

# DU PAGE COUNTY PERSONNEL PAYROLL CHANGE

## Employee Information (Must include address and telephone number for New Hires & Rehires)

Full Name **Nicholas Liberio**　　　HR Company **1000**　　　HR Process Level **EO011**

HR Department Level **SA001**　　　Employee ID ███

Telephone ( ___ ) ___ - ___　　　Gender: Male ☑　Female ☐

## New/ Current Information:

Effective Date (New Hires/ Rehires) _____　　　Accounting Company **1000**　　Accounting Unit **6500**

Department Name **State's Attorney**　　　Activity Code _____

Position Number **1472**　　Current Job Code **2125**　　Current Job Title **Deputy Chief Criminal Investigator**

Current Salary　Hourly $ **46.4689**　　Bi-Weekly $ **3,485.17**　　Annual $ **90,614.36**

　　　　Grade **313**　　% of Midpoint **99.89**

Probationary Period Ends _____　　　Date of Review _____

Shift _____　Payrule Code(Convalescent Center Only) _____　　Phone Group(Convalescent Center Only) _____

## Employee Status

☐ New Hire　☐ Rehire　**75.00** Bi-Weekly Hours　☑ Full-Time　☐ Part-Time　☐ Per Diem　☐ Registry　☐ Temporary

☐ Disability/ FMLA　From _____　To _____　Return Date _____　　☐ Paid Parental Time

☐ Leave of Absence　From _____　To _____　Return Date _____　　☐ Applying for IMRF Date IMRF Begins _____

☐ Military Leave　From _____　To _____　Return Date _____

☐ Worker's Comp　From _____　To _____　Return Date _____

☐ Suspension　From _____　To _____　Return Date _____　　☐ Paid ☐Unpaid

### In Service Changes

☐ Merit Increase　　☑ Promotion　　☐ Job Reclassification　　☐ Other Salary Action (Describe in remarks section)

☐ Equity　　☐ Demotion　　☐ Change Status　From _____ To _____

☐ Transfer (Accounting Company/Unit/Activity Code)　From _____　To _____

## Changes

Effective Date **1/6/2025**

New Position Number **1299**　　New Job Code **2127**　　New Job Title **Chief Criminal Investigator-State's Atty**

New Salary　Hourly $ **54.3590**　　Bi-Weekly $ **4.076.93**　　Annual $ **106,000.05**

Grade **316**　　% of Midpoint **7.29**　　% of Change **16.98**　　☐ Merit (score) _____

☐ 6 month/ Probationary Period Review　　　☐ 1 year Review

Probationary Period Ends _____　　　Date of Next Review _____

Shift _____　Payrule Code(Convalescent Center Only) _____　　Phone Group(Convalescent Center Only) _____

## Remarks (If applicable, please include the position number and the name of employee vacating above position)

Replacing David Zdan.

Requested by ███ /RZ　　　Date **1/9/2025**
Department Head/ Elected Official

Approved by _____　　　Date _____
Director of Human Resources

When the Department Head and Director of Human Resources are the same, the Chief Administrative Officer, or designee, shall sign for the Director of Human Resources.

Revised 12/4/2024

**Illinois Law Enforcement Training and Standards Board**



ILLINOIS LAW ENFORCEMENT TRAINING AND STANDARDS BOARD

JB Pritzker, Governor

Keith Calloway, Executive Director

Phone: (217) 782-4540

Fax: (217) 524-5350

December 1, 2022

Joe Schweihs

RE: Nicholas Liberio

Dear Joe Schweihs,

Your instructor's application for Instructor Approval (In-Service Course) has been received by this office. Staff has completed a review of your application and recommended approval.

Their approved area of instructional expertise includes:

**IN-SERVICE:**

- Firearms Training and Qualifications
- Use of Force Training and Review

The above subject matter is limited to Board certified courses conducted through the Illinois Mobile Team Units or approved training facilities.

Please keep this letter with any previously approved areas of instructional expertise. The application will be kept on file for record and reference.

If we can assist you in the future, please call us at 217/782-4540.

Sincerely,

Keith Calloway
Executive Director

4500 South Sixth Street Road, Room 173, Springfield, Illinois 62703-6617

## DU PAGE COUNTY PERSONNEL PAYROLL CHANGE



### Employee Information (Must include address and telephone number for New Hires & Rehires)

Full Name Nicholas Liberio       HR Company 1000      HR Process Level EO011

HR Department Level SA001      Employee ID

Telephone (____)____-____      Gender: Male ☑   Female ☐

### New/ Current Information:

Effective Date (New Hires/ Rehires) _____      Accounting Company 1000      Accounting Unit 6500

Department Name State's Attorney      Activity Code _____

Position Number 1472      Current Job Code 2125      Current Job Title Deputy Chief of Investigations

Current Salary      Hourly $ 40.2561      Bi-Weekly $ 3,019.21      Annual $ 78,499.40

Grade 313      % of Midpoint 91.8

Probationary Period Ends _____      Date of Review _____

Shift _____ Payrule Code(Convalescent Center Only) _____ Phone Group(Convalescent Center Only) _____

### Employee Status

☐ New Hire  ☐ Rehire  75.0  Bi-Weekly Hours  ☑ Full-Time  ☐ Part-Time  ☐ Per Diem  ☐ Registry  ☐ Temporary

☐ Disability/ FMLA  From _____ To _____ Return Date _____      ☐ Applying for IMRF

☐ Leave of Absence  From _____ To _____ Return Date _____      Date IMRF Begins _____

☐ Military Leave  From _____ To _____ Return Date _____

☐ Worker's Comp  From _____ To _____ Return Date _____

☐ Suspension  From _____ To _____ Return Date _____      ☐ Paid  ☐ Unpaid

### In Service Changes

☐ Merit Increase      ☐ Promotion      ☐ Job Reclassification      ☐ Other Salary Action (Describe in remarks section)

☑ Equity      ☐ Demotion      ☐ Change Status  From _____ To _____

☐ Transfer (Accounting Company/Unit/Activity Code)  From _____ To _____

### Changes

Effective Date 5/13/2023

New Position Number 1472      New Job Code 2125      New Job Title Deputy Chief of Investigations

New Salary      Hourly $ 43.5898      Bi-Weekly $ 3,269.24      Annual $ 85,000.11

Grade 313      % of Midpoint 99.4      % of Change 8.3      ☐ Merit (score) _____

☐ 6 month/ Probationary Period Review      ☐ 1 year Review

Probationary Period Ends _____      Date of Next Review _____

Shift _____ Payrule Code(Convalescent Center Only) _____ Phone Group(Convalescent Center Only) _____

### Remarks (If applicable, please include the position number and the name of employee vacating above position)

## Finance Approval 23-033.

Requested by _____  /RL/  Date 6/12/2023
Department Head/ Elected Official

Approved by _____  Date _____
Chief Human Resources Officer

When the Department Head and Chief Human Resources Officer are the same, the Chief Administrative Officer, or designee, shall sign for the Chief Human Resources Officer.

Revised 1/25/2022

*Nicholas D. Liberio*



| | | |
|---|---|---|
| **Objective** | Position with DuPage County State's Attorney's Office, Investigations Unit | |
| **Education** | Bachelor's Degree in Criminal Justice | |
| | Lewis University – Romeoville, Illinois | 1993-1995 |
| | Chicago Police Academy – 400 Hours | 1989 |
| **Experience** | **Naperville Police Department** | |
| | Supervisor – Major Crimes Unit | 2017-Present |
| | Supervisor Special Operations Group | 2011-2016 |
| | Patrol Sergeant Company A-Nights Central Zone | 2009- 2011 |
| | Investigator – Violent Crimes – Major Crimes Unit | 1999-2009 |
| | Investigator – DuPage County Major Crimes Task Force | 1999-2009 |
| | Intelligence – Undercover Investigator/Special Enforcement | 1993-1999 |
| | Patrol Officer | 1992-1993 |
| | **Wood Dale Police Department** | |
| | Patrol Officer | 1989-1992 |

**Specialized Education**

Certified Lead Homicide Investigator
Masters Conference on Death Investigation
Medicolegal Death Investigator
Sexual Assault Response Team Training
Investigation and prosecution of Child Fatalities and Physical Abuse
Arrest, Search, and Seizure Update for Sergeants
Reid Interview and Interrogations, Basic and Advanced
Field Training Officer Program
Computer Crimes Investigation –S.L.E.A.
Practical Homicide Investigation – Vernon Geberth
Crime Scene Investigation

**Interests**

Mentor
Police Reading Buddy – 12 years
Master Firearms Instructor
Rifle Instructor
Taser Instructor

Additional courses covering various law enforcement topics have also been taken.
References available upon request.





# Illinois Law Enforcement
# Training and Standards Board

## Certificate

*Awarded to*

# Nick D. Liberio

In recognition of the successful completion of the requirements for

## Lead Homicide Investigator

Certificate Number:

101394



1/1/2012

Director,
Illinois Law Enforcement
Training and Standards Board

Chairman,
Illinois Law Enforcement
Training and Standards Board

Issue Date
*Certificates are current for
4 years from issue date.*

# TASER
# TRAINING ACADEMY

## TASER X26 & X26P Conducted Electrical Weapon
### INSTRUCTOR CERTIFICATION

**Nick Liberio**

*This certifies that the above named individual, **Nick Liberio**, has completed the training required and has passed a written examination in the use and instruction of the TASER X26 and X26P Conducted Electrical Weapon (CEWs). The above named individual is hereby certified as a TASER CEW Instructor and may certify others as users under the guidelines of the TASER Training Academy. By accepting this Instructor Certificate, the Recipient accepts the terms of the Training Materials License Agreement, incorporated herein by reference, and agrees to be bound by its terms as a Licensee of TASER International, Inc.*

*In witness whereof, TASER International, Incorporated has caused this certificate to be signed by its duly authorized representative. This certification is valid until* **05/06/2017.**



Mike Son
Master Instructor



# PRACTICAL HOMICIDE INVESTIGATION ®

THIS IS TO CERTIFY THAT

NICK LIBERIO

HAS SATISFACTORILY COMPLETED AND FULFILLED THE REQUIREMENTS OF THIS
ADVANCED COURSE OF INSTRUCTION. THIS CERTIFICATE IS AWARDED IN
RECOGNITION OF THIS ACCOMPLISHMENT.

Vernon J. Geberth, *President*      Date

**P.H.I., INVESTIGATIVE CONSULTANTS, INC.**
POST OFFICE BOX 197
GARNERVILLE, NEW YORK 10923

LITHO IN U.S.A.

# Smith & Wesson Academy

This is to certify that __NICK LIBERIO__ has satisfactorily completed the Armorers School Program in the care and maintenance of __SIGMA__



DIRECTOR

CHIEF INSTRUCTOR

__AUGUST 11, 1998__
DATE

__AUGUST 11, 2002__
EXPIRATION DATE

# Armorers Certificate



**Midwest Counterdrug Training Center**

# Certificate of Training

This certifies that

## Nick Liberio

has successfully completed

### Armed Narcotic Suspect Recognition and Illegal Firearm Seizure

16 Training Hours
Camp Dodge JMTC, Johnston, IA
16-17 March 2016

Louis Savelli
Instructor

LTC Larry Doss
Commandant

# EXHIBIT J

1

# Brady Giglio List

## July 2025

Control & Click on the Officer's name for a sample disclosure.

| Department | Officer | Misconduct |
|---|---|---|
| Aurora | Jonathon Olsen (#236) | Administrative Termination |
| Bartlett | David Lacriola (#193) | Pending Retail Theft |
| Bloomingdale | Eduardo R. Ruiz (#136) | Domestic Battery 24DV1204 |
| Bolingbrook | Jason Leake (#1112) | Truth & Veracity |
| Burr Ridge | Ryan Husarik (#426) | Pending Misd DUI – VA |
| Carol Stream | Justin Wells (#571 / 1571) | Truthfulness Admin Hearing |
| Clarendon Hills | Daniel M Ryan | Official Misconduct |
| Downers Grove | Randy J Caudill (#33) | Official Misconduct |
| DuPage Co Probation | Emily Grunewald | False Police Report |
| DuPage Co Sheriff | Ricardo G. Hardy (#071) | Official Misconduct / CSA |
| DuPage Co Sheriff | Anthony Egan (#988) | Truthfulness |
| DuPage Co Sheriff | Donald S. Augustin (#456) | Truthfulness Admin Chiefs Hearing |
| DuPage Co Sheriff | Rafael Osario (#339) | Truthfulness – Admin Chiefs Hearing |
| DuPage Co SAO | Rob McGowan (#1114) | Unauthorized Outside Employment |
| Elmhurst | Jacob Beltran (#254) | Truthfulness Admin Hrg |
| Glendale Hts – DuMeg | Mark A. Garcia (#396 / 9936) | Theft – Off Misc 24CF1321 |
| Hanover Park | Victor Divito (#215) | Truth & Veracity |
| Hanover Park | Mariola Skonieczna (#173) | Truth & Veracity |

| | | |
|---|---|---|
| Hanover Park | Irmel Kisija (#317) | Administrative Discipline |
| Illinois State Police | David Dickson (#5613) | Attempt Official Misconduct |
| Illinois State Police | Dion Wilson (#6841) | Loan Fraud |
| Illinois State Police | Samantha Hower (#7211) | Loan Fraud |
| Illinois State Police | Rasheed Jeffries (#5803) | Loan Fraud |
| Illinois State Police | Marcus Lyles | Benefits Fraud |
| Illinois State Police | Ravonn Hankins (#7208) | Felony Theft Conviction |
| Itasca | Kevin Keinath (#240) | Felony DUI Conviction |
| Lombard | Cory Cairo (#839) | Administrative Discipline |
| Lombard | Dan Herrera (#819) | False Report – Omission |
| Naperville | Steve Woodham (#4178) | Truth & Veracity |
| Naperville | Clayton Plumtree (#10266) | Truth & Veracity |
| Naperville | Ken Razionale (#8557) | Truth & Veracity |
| Naperville | Noe Ortega (#8933) | Pending DUI 25DT589 |
| Naperville | Griff R. Lippencott (#4469) | Revoked FOID Violation |
| Naperville | Brett Heun (#4999) | Administrative Discipline |
| UIC Lab | Jennifer Bash | Inaccurate & Unqualified Testimony |
| Villa Park | Rene Villarreal (#453) | Truth & Veracity |
| Villa Park | John M. Simons (C.S.O.) | Official Misconduct |
| Villa Park | Aaron Witchelo (#612 / 330) | Administrative Termination |
| Winfield | Michael Dewitt (#115) | Truth & Veracity |
| Wood Dale | Alan Piecuch (#6 or 115) | Administrative Discipline |

# EXHIBIT K



# Village of Burr Ridge

### Mayor Gary Grasso

**Dear Burr Ridge Resident,**

*9476 Falling Water E*

<u>This notice is being provided as a courtesy to help you avoid any disruption to your water service.</u>

Your water service account with the Village of Burr Ridge **currently shows a past due balance.** This may be the result of a missed payment or an issue with automatic payments not processing as expected.

To review past invoices, or make a payment, please **utilize our online payment portal** using the information below. It's a quick and convenient way to manage your account.

See the reverse side of this notice for account information. If you have any questions or believe this notice may have been sent in error, our Utility Billing Department is here to help.

We appreciate your prompt attention to this matter and thank you for being a valued member of our community.

Sincerely,
**Village of Burr Ridge – Utility Billing Department**
📞 Phone: (630) 654-8181 ext. 4030
✉ Email: UtilityBilling@burr-ridge.gov

- *For a faster response, please send an email.*

💻 **Online Portal:**
To view invoices, make a payment, or set up AutoPay, visit:
👉 **www.burr-ridge.gov/invoicecloud**

**Steps:**

1. Click **PAY NOW**
2. Enter your **12-digit Account #,** *(found on the reverse side of this notice)*
3. View invoices & make payments

📞 **Pay by Phone:**
Call (877) 314-2481
*Note: 12-digit account # is required*

Notice Date: 8/26/25

7660 County Line Road
Burr Ridge, IL 60527

(630) 654-8181 📞
www.burr-ridge.gov 🌐